# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

BIOTRONIK, INC.,

                Plaintiff,

        vs.                                  Civil No. 15-00252 WJ/WPL

LAMORAK INSURANCE COMPANY,
     f/k/a ONEBEACON AMERICA
     INSURANCE COMPANY,

                Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION
## TO TRANSFER VENUE UNDER 28 U.S.C. §1404(a)

THIS MATTER comes before the Court upon a Motion to Transfer Venue filed by Lamorak Insurance Company, f/k/a OneBeacon America Insurance Company ("OneBeacon" or "Defendant") on April 2, 2015 (**Doc. 6**).   Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is well-taken; accordingly, it is GRANTED.

## BACKGROUND

Defendant seeks an Order from this Court pursuant to 28 U.S.C. § 1404(a) transferring this case to the United States District Court for the District of Oregon.   This case is before this Court as a result of Defendant's removal of the case on March 27, 2015 on the basis of diversity jurisdiction.   The state court complaint was initially filed by Biotronik, Inc. ("Biotronik" or "Plaintiff") on March 13, 2015 in the First Judicial District Court, County of Santa Fe, State of New Mexico.   Defendant removed the case to federal court on March 27, 2015 on the basis of diversity jurisdiction.    Plaintiff seeks relief for Defendant's alleged breach of contract, and a

declaratory judgment as to coverage under three insurance policies for two underlying tort claims lawsuits.

On March 26, 2015, OneBeacon and Atlantic Specialty Insurance Co. ("Atlantic Specialty") filed suit seeking declaratory relief in the United States District Court for the District of Oregon –the same day Defendant sent Plaintiff a letter denying coverage. *See Atlantic Specialty Insurance Co., et al., v. Biotronik, Inc.,* No. 3:15-cv-00501-PK. Since the venue issue before the Court involves more than one federal lawsuit (the instant lawsuit removed from New Mexico state court and the one filed in Oregon) as well as underlying tort claims lawsuits, a chronological overview of the relevant facts would be helpful to clarify the parties' positions on the issues that the Court will address.[1]

A.  The Parties

Biotronik is a distributor of devices for cardiac rhythm management, including implantable cardioverter defibrillators and pacemakers, and was listed as a named insured under the three insurance policies (the "Policies") that are relevant to this lawsuit.  Biotronik is a corporation presently organized under the laws of the State of Delaware and is qualified to do business in the State of New Mexico.  Biotronik was originally organized and incorporated under the laws of the State of Oregon in 1988.  Ex. C, Art. of Incorp.; Doc. 1, ¶ 5.  However, on December 31, 2014, after the entry of a $28 million verdict against it, Biotronik changed its place of incorporation to Delaware.

OneBeacon is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in Pennsylvania.  At the time the Policies were issues, OneBeacon was a liability insurer incorporated in Pennsylvania and headquartered in

---

[1]  The facts described below are gleaned from information provided by both parties, since the relevant facts and supportive exhibits do not appear to be disputed.

Minnetonka, Minnesota.   At the time the Policies were issued to Biotronik, OneBeacon was licensed to do business in New Mexico.

Atlantic Specialty is a liability insurer incorporated in New York, headquartered in Minnetonka, Minnesota and is licensed to do business in New Mexico.  Atlantic Specialty is the insurer for one of the Policies at issue but was not initially named as a defendant in this case.

B.     The Policies

From August 15, 2005 through August 15, 2008 (the "Policy Periods"), Plaintiff was a named insured under the "Policies issued by Defendant and Atlantic Specialty.   The first policy was issued by Atlantic Specialty and covered the time period from August 15, 2005 through August 15, 2006.  *See* Ex. E, ¶ 9 (Oregon Compl.).  The second and third policies were issued by Defendant and covered the time periods of August 15, 2006 through August 15, 2007, and August 15, 2007 through August 15, 2008.  Ex. E, ¶¶ 11-13.   The Policies were solicited and negotiated by Plaintiff's broker in Oregon (i.e., "Aon Oregon"), and all three Policies were delivered to Aon Oregon in Portland, Oregon.

C.     Underlying Tort Claims Lawsuits ("the Pacemaker Actions")

Biotronik was named as a defendant in two lawsuits for which it is now seeking coverage under the Policies described above: (1) *Sowards, et al. v. Las Cruces Medical Center, LLC, d/b/a Mountain View Regional Medical Center, et al.*, Case No. CV-2009-2563 (N.M. 3rd Judicial Dist. Ct.) (the "Sowards Action"); and (2) *Fraga, et al. v. BIOTRONIK, Inc., et al*., Case No. D-lol-CV-201 12-03539 (N.M. 1st Judicial Dist. Ct.) (the "Fraga Action") (together, both lawsuits referred to as the "Pacemaker Actions").

The Pacemaker Actions arise from the alleged conspiracy on the part of Biotronik and certain physicians to implant Biotronik medical devices into patients who did not need them,

resulting in damages and the patients' loss of an opportunity for a better outcome from their treatments.   The Pacemaker Actions contain allegations that Biotronik provided certain doctors performing the implantations with financial, personal service and other inducements in order to increase the number of implantations of Biotronik devices in patients.   The Sowards Action ended in an adverse jury verdict against Biotronik in the initial amount of 67 million dollars, which Biotronik successfully reduced to a verdict of $28 million.   *See* Doc. 20, Gartman Decl., ¶ 5.[2]   The Fraga Action," includes twenty-eight individual plaintiffs and is still pending in New Mexico state court.   *See* Ex. 7 at 24.   The plaintiffs in both the Sowards Action and the Fraga Action assert that the alleged conspiracy and negligent conduct by Biotronik resulted in seventeen unnecessary or non-indicated implantations during the time periods covered by the Policies.

D.      Biotronik's Tender of Claims and OneBeacon's Response

On December 22, 2014, Biotronik tendered a claim for coverage in the Sowards Action to OneBeacon.   Ex. 1 (*Sowards* Tender Letter); Ex. E ¶ 27 (Oregon Compl.).   On January 23, 2015, Biotronik tendered claims for coverage in the Fraga Action to Dana Lenahan at OneBeacon.   Ex. E, ¶ 31 (Oregon Compl.).   Biotronik notified Ms. Lenahan of the claims by means of three separate letters, one for each of the Policies. Exs. 2-4 (*Fraga* Tender Letters).   Biotronik reiterated its request for coverage under the Policies in subsequent email correspondence and telephone calls.   Biotronik claims that it emphasized that it needed a prompt coverage determination so that it could effectively negotiate toward a settlement with the plaintiffs in the Pacemaker Actions.

OneBeacon states that Biotronik's notices of both of the Pacemaker Actions were late. The plaintiffs in the Sowards Action served Biotronik with their initial complaint in November

---

[2]  Jacob Gartman is an attorney for the firm representing Biotronik.

2010, almost four years before Biotronik afforded notice of the lawsuit.   Similarly, Biotronik

was served with the Fraga Action in March 2012, but did not give notice to OneBeacon until

January 2015.   OneBeacon claims that, prior to receiving notice of the Pacemaker Actions,

Biotronik had on multiple occasions expressly denied to the plaintiffs and the court in the

Sowards Action that it had any insurance available to it that would provide coverage for the

claims in that lawsuit.  Ex. D, Dendinger Decl., ¶ 5.[3]

OneBeacon completed its preliminary investigation of the Pacemaker Actions and issued

its coverage letter to Biotronik on March 26, 2015 advising that the Policies in question do not

afford coverage for the claims asserted in the Pacemaker Actions.  Ex. D, Dendinger Decl., ¶ 16.

Counsel for OneBeacon responded to Biotronik's tender letters by means of two letters.  Exs. 5

& 6 (letters dated Feb.13, 2015).  Biotronik notes that although the actual issuer of the 2005-06

Policy was Atlantic Specialty, OneBeacon's letter regarding the Fraga Action listed all three

insurance policies and stated that "OneBeacon America Insurance Company" was the "Insurer."

*Id.*  This oversight (which Biotronik characterized as a "misrepresentation") was not corrected

until March 26, 2015 when OneBeacon denied coverage.  Ex. 7 at 5.

E.     Lawsuits Filed in New Mexico State Court and in U.S. District Court, District of Oregon

On March 13, 2015, Biotronik filed the complaint supporting the instant action in the

New Mexico state court, when it claims it became clear that OneBeacon did not intend to

promptly provide a coverage determination with respect to the Pacemaker Actions.   The

complaint, now before this Court, alleges that OneBeacon breached the Policies by failing to

provide a coverage determination prior to March 13, 2015.   OneBeacon contends that Biotronik

had not previously made any demands or made any assertions that OneBeacon would be in

breach if it failed to complete its investigation prior to that date.   OneBeacon also contends that,

---

[3]  Matthew Dendinger serves as counsel OneBeacon and Atlantic Specialty.

in light of the more than four-year delay in notice provided by Biotronik to OneBeacon concerning the Pacemaker Actions, there should be no surprise that OneBeacon could not complete its investigation and coverage evaluation in essentially a one-month period between the time it was given access to documents and the March 9, 2015 mediation.   The New Mexico Action was removed to federal court on March 27, 2015.  Biotronik filed an Amended Complaint on April 20, 2015, adding Atlantic Specialty as a party and amending certain allegations.  Doc. 17.

On March 26, 2015, one day before the New Mexico Action was removed to this Court, OneBeacon and Atlantic Specialty filed suit seeking declaratory relief in Oregon Federal District Court –the same day OneBeacon sent Biotronik a letter denying coverage.  *See Atlantic Specialty Insurance Co., et al., v. Biotronik, Inc.,* No. 3:15-cv-00501-PK ("Oregon Action").

Over the past several months, Biotronik has been in intense settlement discussions with the plaintiffs in both the Sowards Action and the Fraga Action (as well as two other New Mexico cases involving similar allegations). (Gartman Decl. ¶ 6.)   By agreement between Biotronik and the plaintiffs in the Sowards Action, any execution efforts by the Sowards Action plaintiffs are currently stayed.   Gartman Decl. ¶ 7.   OneBeacon claims that, while Biotronik informed the insurer of a mediation session to be held on March 9, 2015 with the plaintiffs in the Pacemaker Actions, Biotronik has engaged in prior mediation sessions with the plaintiffs in the Pacemaker Actions without giving notice to OneBeacon in advance.

## DISCUSSION

OneBeacon maintains that the coverage dispute should be heard and decided in Oregon because Biotronik is headquartered in Oregon and is not a citizen of New Mexico and because the Policies were negotiated, purchased and issued in Oregon.  OneBeacon considers the New

Mexico action to be anticipatory and premature because at the time it was filed in state court on

March 13, 2015, OneBeacon had not yet made a coverage determination.   OneBeacon also

characterizes the New Mexico Action as a "race to the courthouse" in attempt to secure what

Biotronik perceives to be a preferred forum, although the initial $67 million jury verdict against

Biotronik in the Sowards Action tends to disprove this argument.   OneBeacon also contends that

the New Mexico Action was incomplete because it did not name Atlantic Specialty, the insurer

for one of the Policies, as a defendant.

 Biotronik contends that its choice of forum, New Mexico, should not be disturbed.

## I. Legal Standard

 In the instant motion, OneBeacon seeks an order transferring this action to the United

States District Court for the District of Oregon pursuant to 28 U.S.C. §1404(a).  As the movant,

OneBeacon bears the burden of establishing that the existing forum is inconvenient.  *Employers*

*Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1167 (10th Cir. 2010) ("*Bartile Roofs*").

 Section § 1404(a) states that, "[f]or the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." 28 U.S.C. § 1404(a).  "The idea behind § 1404(a) is that

where a 'civil action' to vindicate a wrong—however brought in a court—presents issues . . . that

make  one District Court more convenient than another, the trial judge can, after findings,

transfer the whole action to the more convenient court." *Cont'l Grain Co. v. The FBL*-585, 364

U.S. 19, 26 (1960).  Under this provision, the courts have broad discretion to adjudicate motions

to transfer, and should decide motions to transfer on a case-by-case basis. *Chrysler Credit Corp.*

*v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515, 1516 (10th Cir. 1991).   Based on its language,

an analysis under §1404(a) requires consideration on three fronts:  (1) whether the case could

have been brought in the other district or division; (2) whether discretionary factors weigh in favor of transfer based on the convenience of parties and witnesses; and (3) whether transfer is in the interest of justice.

Courts consider the following discretionary factors when evaluating the convenience of parties and witnesses: (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical. *Bartile Roofs, Inc*., 618 F.3d at 1167 (citing *Chrysler*, 928 F.2d at 1516)).

The "interest of justice" analysis is a separate element of the transfer analysis that relates to the efficient administration of the court system. *See Van Dusen v. Barrack*, 376 U.S. 612, 626-27 (1964). This element is concerned with both judicial efficiency and the avoidance of conflict between coordinate courts. *See Cont'l Grain Co*., 364 U.S. at 26 ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."); *Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986) (the "interest of justice" factor includes "the avoidance of conflict between coordinate courts"). In some circumstances, "[t]he interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010) (citation

8

omitted).   Thus, even though generally a plaintiff's choice of forum is afforded deference, that

factor may "lose its significance entirely" where a case involves "two identical suits in distinct

venues . . . ."   626 F.3d at 979.

## II.   Jurisdictional Consideration

The only limitation on the Court's discretion to transfer a case under 28 U.S.C. § 1404(a)

is the requirement that the new forum be a "district or division where [the case] might have been

brought." 28 U.S.C. § 1404(a).   Where the case "might have been brought" is determined by 28

U.S.C. § 1391(e)(1), which provides that, in suits against agencies of the United States, venue is

proper in "any judicial district in which (A) a defendant in the action resides, (B) a substantial

part of the events or omissions giving rise to the claim occurred . . . or (C) the plaintiff resides"

*Id.*   A person's place of residence under §1391(c)(1) is defined as the district in which the

person is domiciled, and an entity's residence is defined in §1391(c)(2) as its "principle place of

business."

Defendant contends, and Plaintiff does not dispute, that this action could have been

brought in the U.S. District Court for the District of Oregon, based on complete diversity of

citizenship and the amount in controversy.[4]  Venue would also be proper in the District of

Oregon under 28 U.S.C. §1391 because Biotronik has its principal place of business in the

District, the Policies were negotiated through an insurance broker located in Oregon, and were

delivered by OneBeacon to Biotronik's principal place of business in Oregon.   The denial of

coverage was effectively conveyed to Biotronik in Oregon and finally, the District of Oregon

would have personal jurisdiction over the parties, including Atlantic Specialty.   Having found

---

[4] BIOTRONIK is a Delaware corporation with its principal place of business in Oregon; Atlantic Specialty is a New York corporation with its principal place of business in Minnesota; Lamorak Insurance Company is a Pennsylvania corporation with its principal place of business in Pennsylvania; and until it was purchased by Lamorak, OneBeacon America was a Pennsylvania corporation with its principal place of business in Minnesota.

that this case could have been brought in the District of Oregon, the analysis proceeds to consider the discretionary factors under §1404(a).

## III.     Discretionary Factors

Parties focus on a few of the discretionary factors that are relevant to the circumstances of this case, namely: the plaintiff's choice of forum; choice of law considerations; accessibility of witnesses; and difficulties that may arise from congested dockets.

A.     <u>Plaintiff's Choice of Forum</u>[5]

Generally, the plaintiff's choice of forum weighs against transfer.  Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum "should rarely be disturbed." *Bartile Roofs, Inc.,* 618 F.3d 1153 at 1167-68.   There are, however, certain factors which may result in a court giving less deference to a plaintiff's choice of forum. OneBeacon argues that such factors exist here and the Court finds that this argument has merit.

### 1.     *Residence*

A plaintiff's choice of forum choice of forum receives less deference if the plaintiff does not reside in the district.   *Bartile Roofs,* 618 F.3d at 1168.  Because Biotronik does not dispute that it does not reside in New Mexico, this factor attenuates deference to Biotronik's choice of forum.

### 2.     *Comprehensive of Action*

OneBeacon claims that the District of Oregon lawsuit is more comprehensive because it includes Atlantic Specialty.  However, this factor is neutral because Biotronik has amended the instant lawsuit to include Atlantic Specialty as a party.  *See* Doc. 17 (Amended Compl.).

### 3.     *Removal of Case*

---

[5]  Because the parties discuss the "interest of justice" factor within the context of Biotronik's choice of forum, the Court will include its consideration of that factor within that context as well.

OneBeacon notes that Biotronik's first choice of forum was *state* court in New Mexico and that OneBeacon's removal to federal court diminishes the presumptive effect of Biotronik's choice of forum.   Biotronik argues that a defendant's statutory right of removal should not weaken a plaintiff's geographic choice of forum.   There appears to be a legal basis for both arguments.  *See Improvita Health Products, Inc. v. F&F Foods, Inc.,* 2007 WL 1577789, at *3 (N.D. Ohio, May 31, 2007) (plaintiff's choice of forum loses presumptive effect on removal to federal court); *Len Tran, Inc. v. Cal-Sungold, Inc.,* 2008 WL 2025287, at *3 (M.D. Fla., May 9, 2008) (same); *but see Innovations Enters. Ltd. v. Haas-Jordan Co*., 2000 WL 263745, at *2-3 (E.D.N.Y. Jan. 4, 2000) (venue is "primarily an issue of geography, and plaintiff has clearly expressed a preference for litigating within" that location).  This factor does not weigh more heavily on the side of either party.

### 4.    Connection of Facts to Forum

Courts also accord little weight to a plaintiff's choice of forum "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Cook v. Atchison, Topeka & Santa Fe Ry. Co.,* 816 F.Supp. 667, 669 (D.Kan.1993); *Bartile Roofs,* 618 F.3d at 1168.

The Court finds that this factor holds some weight in favor of transfer.  The facts giving rise to this lawsuit are those facts concerned with the coverage dispute between the parties.  It is undisputed that the Policies were negotiated, purchased and issued in Oregon where Biotronik is headquartered.   However, Biotronik contends that in considering the facts that have a significant connection to its chosen forum, the Court should instead consider those facts related to where the alleged damage or loss occurred, and cites to several cases to support this contention.  *See Navajo Nation v. Urban Outfitters, Inc*., 918 F.Supp.2d 1245, 1253  (D.N.M., 2013) (The

11

location of any alleged damage or loss may be significant for purposes of analyzing this factor)
(citing *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d at 1168) ("*Bartile Roofs*").
However, the cases cited by Biotronik are posturally inapposite. For example, the *Navajo Nation*
case was a trademark case, where there were no underlying factual scenarios to consider.  In
another case cited by Biotronik, *Gulf Ins. Co. v. Gaslbrenner*, the court determined that the facts
"giving rise to the claim" were those concerning the *coverage* issue, which was "whether an
insurance contract applies to provide coverage for a judgment."  417 F.3d 353, 356-57 (2d Cir.
2005) ("At its core, Gulf's suit sounds in contract").  Notably, the court found that venue was
also appropriate where the underlying tort occurred.   However, the *Gulf Ins. Co.* decision is not
helpful here because the issue in that case was whether venue was *improper* under §1391 and
whether the case should be dismissed on that basis—which the court rejected. [6]  The question
before the Court here is not whether the case should be dismissed because venue is improper in a
particular forum, but whether it should be transferred to a more practical or efficient forum under
§1404.  To consider transfer of venue under §1404, it is understood that venue must be proper in
either forum in order to meet the threshold requirement for consideration of venue transfer under
§1404.

Both parties discuss an unpublished District of New Mexico case, *Quorum Health Res.,
LLC v. Lexington Ins. Co.,* which involved a declaratory judgment action involving insurance
coverage.  2012 WL 769744, at *3 (D.N.M. 2012).   In that case, the relevant insurance policies
had been negotiated and purchased in Tennessee by insureds also located in Tennessee.  The
insureds were sued by medical patients in New Mexico, and the insurers reserved their rights to
deny coverage for those lawsuits.  Similar to this case, the insureds brought a declaratory

---

[6]     Biotronik cites to another case, *Uffner v. La Reunion Francaise, S.A.,* 244 F.3d 38, 43 (1st Cir. 2001)
which is also posturally distinguishable, since the question in that case was also whether venue was improper under
§1391.

judgment action in New Mexico to determine coverage under the policies for the New Mexico lawsuits.   United States District Judge Martha A. Vazquez concluded that the plaintiff's choice to "initiate this action in New Mexico is granted little weight" because there was a "single, alternative venue" that would be convenient—which was Tennessee.  *Id.* at 3.

Judge Vazquez contrasted the facts in *Quorum* from those in *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d at 1153, where the contract at issue had been negotiated and executed in Utah and the denial of coverage had occurred in Colorado, but the underlying alleged damage had occurred in Wyoming where the case was filed.   The *Bartile Roofs* court observed that "several district courts have determined that the locus of operative facts . . .  is either the site of the policy's execution or the site of the decision to deny coverage," while other courts "have found that the location of the alleged damage or loss is 'significant' for purposes of analyzing the convenience of a particular venue. . . ."  *Id.* (quoting *Bartile Roofs,* 618 F.3d at 1168.   However, Judge Vazquez noted that in *Bartile Roofs,* the court did not need to decide which approach to adopt since there was not a "single, alternative venue."

Biotronik argues that this case resembles *Quorum* in that there is a "single, alternative venue" but somehow misreads the case to mean that the "single, alternative venue" is New Mexico.  Biotronik cannot rely on *Quorum* to argue that the "single, alternative venue" for this case is in New Mexico because *Quorum* rejected the location of alleged damage or loss as significant (which in *Quorum* was also New Mexico), and found that it had "no relevance for venue purposes."  *Quorum,* 2012 WL 769744, *3.   Thus, Biotronik's reliance on *Quorum* is self-defeating because *Quorum's* reasoning and analysis would support transferring this case to the District of Oregon.

In this case, the facts giving rise to the lawsuit center around the coverage issue.  There is no dispute that the relevant facts for this lawsuit occurred in Oregon, making Oregon the "single, alternative venue."  Biotronik offers no legal basis for the Court to adopt the approach that the location of the alleged or damage or loss governs the analysis or that the facts related to the underlying tort claims are significant enough to disregard the factual consistency of the coverage issues.[7]

5.     *First to File ("First-Filed Rule")*

The Court may also consider whether any deference should be afforded the New Mexico Action filed by Biotronik case as the "first-filed" case.   OneBeacon argues that Biotronik is not entitled to any deference on a first-to-file basis.

The "first-to-file" (or "first-filed") rule pertains to "when two district courts have jurisdiction over the same controversy, affording deference to the first filed lawsuit." *Lipari v. U.S. Bancorp NA,* 345 Fed.Appx. 315, 317 (10th Cir.2009); *U.S. ex rel. Brown Minneapolis Tank Co. v. Kinley Const. Co*., 816 F.Supp.2d 1139, 1149-50 (D.N.M.,2011). The general rule is that "when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." *Hospah Coal Co. v. Chaco Energy Co.,* 673 F.2d 1161, 1163-64 (10th Cir.1982).   Courts do not mechanically apply the first-to-file rule, but "the court which

---

[7]     Some courts that have considered the issue of what facts are relevant have held that a party suffers damages where the party is located.  In *W. Am. Ins. Co. v. RLI Ins. Co*., the insured who was a Kansas resident sued his insurer for its refusal to settle third party claims for an automobile accident that took place in Missouri. 698 F.3d 1069, 1074 (8th Cir. 2012).  The Eighth Circuit concluded that the insured "felt the impact" of the insurer's allegedly wrongful refusal to settle the case in Kansas where the economic injury occurred and where the insured resided, rather than in Missouri where the accident took place.  The court reasoned that "Kansas has a significant interest in protecting its residents from liabilities caused by the negligence or bad faith of insurers controlling the defense of third party claims." *Id.* at 1074.   While the issue in *RLI Ins.* was whether Kansas or Missouri law applied rather than a venue issue, the case is instructive on the analysis used to determine where a particular "injury" occurs in the insurance context.   *See also Kenney v. Indep. Order of Foresters*, 744 F.3d 901, 908 (4th Cir. 2014) (finding the alleged injury the plaintiff suffered due to insurer's purported unfair settlement practices occurred where plaintiff resided); *Lange v. Penn. Mut. Life Ins. Co*., 843 F.2d 1175, 1179 (9th Cir. 1988) (same).   Under this reasoning, the location of the alleged damages or loss would be Oregon, rather than New Mexico where the Pacemaker Actions were litigated.

first obtains jurisdiction should be allowed to first decide issues of venue." *Id.* (reversing and remanding a district court's preliminary injunction order with instructions for the district court to dismiss that action so that the court in which the matter was first filed could first decide issues of venue); *U.S. ex rel. Brown Minneapolis Tank Co. v. Kinley Const. Co.,* 816 F.Supp.2d 1139, 1150 (D.N.M. 2011).

The first-filed rule is premised on fostering judicial economy and efficiency, and in avoiding risk of potentially conflicting rulings. *See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc*., 679 F. Supp. 2d 1287, 1297 (D. Kan. 2010) (first-filed rule provides second district court with "discretion to transfer, stay or dismiss the second case in the interest of efficiency and judicial economy"); *Cianbro Corp. v. Curran-Lavoie, Inc.,* 814 F.2d 7 (1st Cir. 1987) (Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision).

The main factors to consider under the first-filed rule are: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of issues. *The Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1167 (N.D. Okla. 2010) (*"Nash"*).   For the second factor, the parties need not be identical and "[o]nly similarity or substantial overlap is required." *Shannon's Rainbow, LLC v. Supernova Media, Inc.*, 683 F.Supp.2d 1261, 1278-79 (D.Utah 2010); *see Ed Tobergte Assocs., Inc. v. Zide Sport Shop of Ohio, Inc*., 83 F. Supp. 2d 1197, 1198 (D. Kan. 1999) ("[s]ubstantial similarity in the parties and issues is sufficient to invoke application of the rule").   Biotronik filed its lawsuit first by filing the New Mexico Action in state court on March 13, 2015, about two weeks before OneBeacon filed its lawsuit in the District of Oregon.  The second and third factors are satisfied here as well.  The insurance coverage issue is the same and

the parties are in fact now identical, with Biotronik's recent amendment of the complaint to add

Atlantic Specialty.  Technically speaking, Biotronik's lawsuit is the first-filed.


      *(a)*     *Special Circumstances*

     In determining which of two simultaneously pending cases should proceed, courts

generally follow the first-to-file rule. *Koch Eng'g Co., Inc. v. Monsanto Co.,* 621 F.Supp. 1204,

1207 (E.D.Mo.1985).  However, courts do not follow the first-to-file rule where special

circumstances exist that justify giving priority to the later-filed action.  *Heatron, Inc. v.*

*Shackelford*, 898 F.Supp. 1491, 1494 (D.Kan.,1995).   Such circumstances exist where the first-

filed suit is a declaratory judgment action triggered by receipt of a notice letter.  *Id.* (former

employee's first-filed declaratory judgment suit, seeking relief from noncompetition covenant,

did not have priority over employer's subsequent action to enforce covenant).   Also, generally

speaking, a lawsuit will not be considered an anticipatory filing unless a party situated as a

"natural defendant" files a declaratory judgment action in its choice of forum in anticipation of a

lawsuit being filed against it.  *Brown Minneapolis Tank Co*., 816 F.Supp.2d at 1151 (noting that

courts have also departed from a first-to-file rule where one party files its lawsuit in anticipation

of an impending suit by the opposing party).[8]  OneBeacon argues that special circumstances

exist here where priority should be given to its lawsuit filed later in the District of Oregon,

claiming that Biotronik's lawsuit is premature and filed in anticipation of OneBeacon's

---

[8]   *See also Schwarz v. National Van Lines, Inc*., 317 F.Supp.2d 829, 833 (N.D.Ill.2004) (finding that where a plaintiff files an action "in the face of a clear threat" that the opposing party will sue, a court will dismiss a first-to-file argument); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc*., 819 F.2d 746, 749 (7th Cir.1987) (stating that, where declaratory judgment action is filed in anticipation of trademark infringement action, the infringement action should proceed, even if filed after the declaratory judgment action); *cmp. Mohawk Field Services, Inc. v. WPT LLC*, 2014 WL 580140, at *3 (N.D.Okla.,2014) (citing *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*, 189 F.3d 477 (10th Cir.1999) (affirming dismissal of plaintiff's suit for declaratory judgment where suit was filed in Utah district court in anticipation of defendant's later filing of a trademark infringement action in Georgia district court) (other citations omitted).

subsequent lawsuit.  OneBeacon contends that as a result, Biotronik's choice of forum should not be entitled to any deference under the first-to-file rule.

Biotronik insists that its lawsuit is not anticipatory, maintaining that while it filed its lawsuit first, Biotronik is not a natural defendant seeking to avoid the threat of litigation from its insurer, OneBeacon America.  *See Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271, 276 (2d 2008) (in order for a declaratory judgment action to be anticipatory, it must be filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action).  Because it is not an anticipatory lawsuit, Biotronik maintains that the "special circumstances" exception does not apply to the first-filed New Mexico Action.  Rather, Biotronik sees itself as the natural, or "substantively correct" plaintiff in this coverage dispute, since it seeks coercive relief for damages while OneBeacon's District of Oregon action contains only claims for declaratory relief.  *Mohawk Field Serv., Inc.,* 2014 WL 580140, at *3 (N.D. Okla. Feb. 12, 2014) (finding no forum shopping existed where plaintiff in first-filed lawsuit was in posture of natural plaintiff, affirmatively seeking damages under contract).   Biotronik considers its claim "coercive" because it seeks damages as opposed to the purely declaratory relief sought by OneBeacon America in the Oregon action.  *See Thomason, Inc. v. Parental Guide of Texas, Inc.,* 2003 WL 21078110, at *2 n.1 (S.D.Ind. May 12, 2003) (distinguishing coercive relief from declaratory or injunctive relief).

OneBeacon contends that the "natural plaintiff" concept has no meaning in insurance coverage disputes.  *See Am. Cas. Co. of Reading, Pa. v. Filco, No. 04 C 3782,* 2004 WL 2674309 (N.D.Ill. Oct.15, 2004) (*citing LaSalle Nat. Trust, N.A. v. Schaffner*, 818 F.Supp. 1161, 1166–67 (N.D.Ill.1993)) (holding that an insured could not be deemed the "natural plaintiff" in a declaratory judgment suit because Illinois law also allowed insurance companies to bring

declaratory judgment actions where there is a "real and immediate necessity" to address the duties owed under a policy). In this situation, it is not clear whether Biotronik's first-filed case is anticipatory. OneBeacon also points out that Biotronik's description of its claims as "coercive" is not dispositive here, where both parties seek declaratory relief in their respective lawsuits.

The question of whether Biotronik's first-filed New Mexico Action is anticipatory is not clear based on the record before the Court. In the context of declaratory judgment actions between an insurer and its insured, a plaintiff's action does not seem to fit into the usual "natural plaintiff" or "natural defendant" category. *See* citations to cases, n.8, *supra*; *cmp. Employers Ins. of Wausau,* 522 F.3d at 276 (insurer's declaratory judgment suit was not an improper anticipatory action where no direct threat of litigation existed by insured and insured did not notify insurers of potential claims against the policies until after the insurer's lawsuit was filed) *with Houston General Ins. Co. v. Equitable Life Assur. Soc. of U.S*., 1989 WL 13473, unpubl. opin. (W.D.N.Y.) (using discretion to decline to hear declaratory judgment action that was filed by an insurer to determine its coverage obligations, in anticipation of suit by insured). Because it is not clear that Biotronik's lawsuit is anticipatory, the Court concludes for purposes of venue analysis that the New Mexico action is first-filed and that the "special circumstances" exception does not apply.

In arguing that Biotronik's lawsuit is premature and anticipatory, OneBeacon also claims that Biotronik's lawsuit is not ripe. Biotronik correctly recognizes that this issue is completely unrelated from a first-filed inquiry. *See* Doc. 19 at 12, n.12. The issue of ripeness is not squarely before the Court, nor does OneBeacon challenge this Court's subject matter jurisdiction over this case under Fed.R.Civ.P.12(b)(1). Since both parties refer to this issue, the Court will note that OneBeacon's ripeness argument would fail. The cases cited by Defendant have nothing

to do with whether Plaintiff's lawsuit is anticipatory; nor do they support Defendant's argument that Plaintiff's lawsuit is not ripe.  For example, Defendant describes the holding in *Yacht Club on the Intracoastal Condominium Ass'n, Inc. v. Lexington Ins. Co.*, as a dismissal of an insured's breach of contract and declaratory judgment claims against an insurer because the claims were not ripe.  Doc. 6 at 12.  However, this description misrepresents the holding of that case, since the court in that case actually stated that "ripeness can be affected by events occurring after the case is filed," and found that the insured's claims against the primary insurer were in fact ripe. 509 Fed.Appx. 919, 922 (11th Cir. 2013) (citing *Blanchette v. Connecticut General Ins. Corps.,* 419 U.S. 102, 140, (1974) (stating that "ripeness is peculiarly a question of timing[;] it is the situation now rather than the situation at the time of the District Court's decision that must govern").  Also, in *Yacht Club,* the insurer's denial of coverage after the lawsuit had been filed satisfied jurisdictional requirements for ripeness.  For the same reason, OneBeacon's denial of coverage after Biotronik filed the New Mexico Action satisfies any previous ripeness deficiencies that existed at the time the lawsuit was filed.[9]

(b)    *Application of Discretionary Factors*

As just discussed, because Plaintiff's New Mexico Action cannot definitively be deemed an anticipatory action, the Court concludes that Plaintiff's New Mexico Action should be given deference as a first-filed action.  As previously discussed, a finding that a court is the first to obtain jurisdiction "does not necessarily mean that it should decide the merits of the case." *Hospah Coal Co.,* 673 F.2d at 1164).  The inquiry still requires selection of the more appropriate forum, since the first-filed rule is *only a presumption* that may be rebutted by proof of the

---

[9]  As Plaintiff points out, OneBeacon's argument that a suit is always anticipatory if it is filed before an insurer sends a letter officially denying coverage runs counter to equitable considerations.  Such an interpretation of the law would unfairly favor insurers, who control the timing of their coverage denial decisions, and who could file a declaratory judgment action on the same day that it decides to send out its denial letter.

desirability of proceeding in the forum of the second-filed action." *Cherokee Nation v. Nash*, 724 F.Supp.2d 1159, 1166 (N.D.Okla.,2010) (emphasis in original).

Application of the first-filed rule is a matter left to the court's discretion. *See U.S. ex rel. Brown Minneapolis Tank Co. v. Kinley Const. Co*., 816 F.Supp.2d 1139, 1152 (D.N.M.,2011) (noting that Tenth Circuit "maintain[s] substantial support for first-filed rule, but has "left room for discretion"). The Court's finding that Plaintiff's New Mexico Action was not anticipatory does not in itself dispose of the venue issue. The Court must still decide whether there are sufficient factors which weigh more heavily in favor of, or against, transfer, and these discretionary factors become even more important to consider in the absence of special circumstances to the first-filed rule. *See Employers Ins. of Wausau v. Fox Entertainment Group, Inc*., 522 F.3d 271, 276 (2d Cir. 2008) (where special circumstances exception to first-filed rule is not present, a balancing of the conveniences is necessary). Thus far, the weight given to Plaintiff's choice of forum in New Mexico is attenuated for various reasons, namely, because Plaintiff does not reside here, and because of the paucity of any connection between the facts giving rise to the main issues in this lawsuit and this forum.

B.      Choice of Law Considerations

One of the discretionary factors courts consider on questions of venue transfer is the possibility of the existence of questions arising in the area of conflict of laws. Defendant contends that under both New Mexico's and Oregon's choice of law rules, Oregon law will govern the resolution of the coverage issues which form the basis for this lawsuit.

New Mexico courts apply the doctrine of "lex loci contractus," which requires the court to "interpret insurance contracts according to the law of the place where the contract was executed." *Valencia v. Colorado Cas. Ins. Co.,* 560 F.Supp.2d 1080, 1085 (D.N.M. 2007),

unless the law presents a matter of fundamental interest and conflicts with New Mexico public policy." *Wilkeson v. State Farm Mut. Auto Ins. Co.,* 329 P.3d 749, 750 (N.M.Ct.App. 2015); *State Farm Mut. Aut. Ins. Co. v. Ballard,* 132 N.M. 696 (2002).   The District of Oregon would also apply Oregon law even though Oregon follows the choice of law approach set forth in the Restatement (Second) Conflict of Laws rather than the lex loci contractus doctrine.   Oregon courts have recognized that Oregon has a "substantial interest in the regulation of insurance contracts and in determining the rights and liabilities of the parties who enter into those contracts in Oregon." *Pearson v. Provident Life and Acc. Ins. Co.,* 834 F.Supp.2d 1199, 1208-09 (D.Or. 2004).

Plaintiff does not dispute that Oregon law applies, but argues that this factor weighs only *slightly* in favor of transfer.   The Court agrees with Plaintiff that this Court certainly has the ability to apply the law of another forum in a diversity case.   The Court also finds that Defendant's description of the "numerous issues" seems to be somewhat overblown in terms of complexity.   Even so, choice of law considerations is only one of the discretionary factors in this analysis and while here it favors Defendant's position only slightly, it still weighs on the side of transfer. *See Quorum Health Resources,* 2012 WL 769744, at *4 (finding choice of law factor weighed only slightly in favor of transfer because the question at issue was a "straightforward contract question" related to insurance policies which the court was "qualified to apply" but that the forum's familiarity with the governing law was nevertheless a factor to consider).

Plaintiff cites to two "exceptions" to the applications of Oregon law which Plaintiff hopes convinces the Court that transfer is not appropriate.   First, Plaintiff argues that applying Oregon law to one of the disputed issues would result in a violation of the fundamental principles of justice of New Mexico.   In support of this contention, Plaintiff cites to *Demir v. Farmers Texas*

*Cnty. Mut. Ins. Co.*, 140 N.M. 162, 165 (Ct.App. 2006) in which the application of Texas law, which governed the insurance contracts, would have a result opposite to what New Mexico law required.   Texas law would not allow recovery of uninsured motorist benefits without the occurrence of an actual physical contact between the motor vehicle owned by the unknown person, and the person or property of the insured.  New Mexico law would invalidate the no-contact clause and allow recovery.  *Id.*  Plaintiff has conceded that there is no "appreciable difference between Oregon and New Mexico law on any particular issue," Doc. 22 at 29, except for one issue.  Defendant has denied coverage in part based on the "Products-Completed Operations Hazard" ("PCOH") exclusion in the policies.  Plaintiff argues that applying Oregon law to the PCOH exclusion in the broad way advocated by OneBeacon "would have the effect of swallowing up the broad insuring clause because Biotronik is a company whose business is selling products" and would defeat the purpose of purchasing such a policy.  Doc. 19 at 23.  For this reason, Plaintiff argues that New Mexico, and not Oregon, would likely be the choice of law, resulting in this factor weighing against transfer.

However, the very reasons given by Plaintiff against transfer based on the PCOH exclusion actually weigh in *favor* of transfer.  Plaintiff has provided no reason why New Mexico would have any interest in applying New Mexico public policy to an insurance policy issued in Oregon to a foreign corporation that is not a New Mexico resident.   Plaintiff's reliance on *Demir* is misplaced.  While the court in that case did apply New Mexico law, the case was before the court on its merits, not on a venue motion, and the court in *Demir* at that point had no choice but to apply the proper law to the issue, whether it was New Mexico law or Texas law.   In this case, the venue issue is before this Court, and it would make no sense to decide against transfer and hear this case, only to end up applying New Mexico public policy to a contract governed by

Oregon law.[10]  Also, Plaintiff's adamance concerning the application of New Mexico law to the PCOH exclusion suggests that Defendant may be correct in its charge of improper forum shopping on Plaintiff's part.

The second exception to the application of Oregon law cited by Plaintiff is that OneBeacon's claim in the Oregon action based on the doctrines of res judicata, collateral estoppel and judicial estoppel would be governed by New Mexico law because the verdict and judgment in the underlying tort claim lawsuits were entered in New Mexico.  However, Plaintiff cannot identify any difference in how New Mexico's version of these doctrines differs from Oregon's version.  *Cmp. Hartnett v. Papa John's Pizza USA, Inc*., 828 F. Supp. 2d 1278, 1285–86 (D.N.M. 2011) (discussing New Mexico res judicata and collateral estoppel analysis); with *In re Marriage of Ewald v. Ewald*, 294 P.3d 511, 515 (Or. Ct. App. 2012) (discussing Oregon res judicata); *Engquist v. Oregon Dep't of Agric*., 478 F.3d 985, 1007 (9th Cir. 2007) (discussing Oregon collateral estoppel) *aff'd sub nom*. 553 U.S. 591 (2008).  Thus, this exception does not weigh against transfer because it does not matter which court applies these doctrines.

Therefore, the choice of law factor weighs in favor of transfer.   The advantage of having a local court determine questions of law is yet another discretionary factor courts may consider.  While the Court is certainly capable of applying Oregon law to the coverage disputes concerning the Policies, there is a preference in favor of having the local court—in this case, Oregon—determine questions of local law. *See Bartile Roofs, Inc.,* 618 F.3d at 1169 ("In a diversity action, courts prefer the action to be adjudicated by a court sitting in the state that provides the governing substantive law.").

C.      Accessibility of Witnesses

---

[10]   Plaintiff also cites to another New Mexico case that is inapposite because the "irreconcilable" conflicts relate to provisions within the same insurance policy, and have nothing to do with choice of law between two forums. *Knowles v. United Servs. Auto. Ass'n*, 113 N.M. 703, 707 (1992).

OneBeacon anticipates that a significant number of those witnesses and sources of proof will be located in Oregon.   To demonstrate inconvenience, the movant must (1) identify witnesses and their locations; (2) indicate quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that use of compulsory process would be necessary.  *Bartile Roofs, Inc.,* 618 F.3d at 1169.

Plaintiff contends that Defendant has failed to identify a single witness or party who would be inconvenienced by a New Mexico forum, or to explain why any necessary witness would be unavailable in New Mexico.   *See Navajo Nation v. Urban Outfitters, Inc*., 918 F. Supp. 2d at 1257 (noting movants' failure to identify employees by name, describe their testimony, or explain why they would be unavailable absent transfer).  The Court disagrees with that assessment.  Defendant has not identified specific witnesses by name, but has sufficiently identified individuals who would be more easily found in Oregon than in New Mexico, such as: Biotronik's past and present employees, company representatives and its insurance broker, Aon Risk Services Inc. of Oregon.   It is reasonable to expect these individuals to be material witnesses in the coverage disputes that are central to this lawsuit.  In contrast, Biotronik does not identify any potential witnesses in New Mexico, merely referring to "the possibility of New Mexico witnesses" should OneBeacon "challenge the reasonableness of the settlement in New Mexico or seek discovery relating to underlying plaintiffs in the [Pacemaker Actions],"   Doc. 19 at 19, n.18.  This factor weighs heavily in favor of transfer, since it is "the most important factor in deciding a motion under §1404(a).  *Bartile Roofs,* 618 F.3d at 1169.

D.   <u>Congested Dockets</u>

Defendant provides a chart purportedly demonstrating the heavier congestion of court docket in the District of New Mexico as compared to the District of Oregon, but the Court is not persuaded that there is enough of a difference to seriously consider this as a factor supporting transfer.

## CONCLUSION

In conclusion, the Court finds and concludes that this case should be transferred to the District of Oregon under §1404(a) and that the District of Oregon is the more appropriate and superior venue for adjudicating the coverage disputes at issue in this case.  As discussed above, this action could have been brought in the District of Oregon, and based on the discretionary factors set forth in *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515, 1516 (10th Cir. 1991), the Court finds and concludes that the balance of convenience weighs in favor of transfer.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Transfer Venue **(Doc. 6)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that the Clerk of Court is hereby directed to transfer this civil case to the United States District Court for the District of Oregon.

A judgment transferring the case shall be entered separately.

_____
UNITED STATES DISTRICT JUDGE